1

2

3

4

5

6

7         IN THE UNITED STATES DISTRICT COURT

8             FOR THE DISTRICT OF ARIZONA

9

10  Darryl Lee White,                    )    No. CV-09-2167-PHX-FJM (LOA)
                                         )
11          Petitioner,                  )    **REPORT AND RECOMMENDATION**
                                         )
12  vs.                                  )
                                         )
13  Charles L. Ryan, et al.              )
                                         )
14          Respondents.                 )
                                         )
15  _____)

16         Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §

17  2254.  (docket # 1)   Respondents have filed an Answer, docket # 11, to which Petitioner has

18  replied, docket # 12.   On Petitioner's motion, the Court granted Petitioner until February 20,

19  2010 to submit additional materials in support of his Reply.  Petitioner has not submitted any

20  further materials and the February 20, 2010 deadline has passed. (docket # 13)  Accordingly,

21  this matter is ready for review.  For the reasons set forth below, the Petition should be

22  denied.

23  **I. Factual and Procedural Background**

24         **A.  Charges, Plea, and Sentencing**

25         On June 9, 2006, a thirteen-count indictment was filed in Maricopa County Superior

26  Court, CR 2006-030391-001 SE, charging Petitioner with the following offenses: Counts 1

27  & 6 - aggravated assault, class 6 felonies; Count 3 - sexual abuse, a class 3 felony and

28  dangerous crime against children; Count 4 - molestation of a child, a class 2 felony and

dangerous crime against children; Count 5 - sexual conduct with a minor, a class 2 felony and dangerous crime against children; Counts 7 & 10 - sexual abuse, class 5 felonies; Count 8 - attempted sexual abuse, a class 6 felony; Count 9 - sexual conduct with a minor, a class 6 felony; Counts 11 & 12 - sexual assault, class 2 felonies; and Count 13 - aggravated assault, a class 3 dangerous felony. (Respondents' Exh. B[1])  The offenses allegedly took place on March 2, 2005.  The victims were A.D., alleged to be under the age of fifteen (Counts 1, 3, 4, 5); D.B., alleged to be a minor fifteen years of age or over (Counts 6, 7, 8, 9), and B.K., a person of fifteen or more years of age. (Counts 10, 11, 12, 13).  (Respondents' Exh. B) Petitioner allegedly engaged in the charged conduct at his town home on March 2, 2005, where the victims were present to perform for Petitioner who purported to be auditioning singers for his recording business.  (Respondents' Exh. A)

On April 24, 2007, Petitioner entered into a plea agreement with the State, pleading guilty to Count 4, as amended, attempted molestation of a child, a class 3 felony and dangerous crime against children; and Count 5, as amended, attempted sexual conduct with a minor, a class 3 felony and dangerous crime against children.  (Respondents' Exhs. B, C, D[2])  The plea agreement specified that the "crimes carry a presumptive sentence of **10** years, a minimum sentence of **5** years, and a maximum sentence of **15** years." (Respondents' Exh. C) (emphasis in original).   In the plea agreement, the parties stipulated that on Count 4, Petitioner would be sentenced to the Arizona Department of Corrections, and that on Count 5, Petitioner would be placed on lifetime probation that would include all sexual offender terms and conditions of probation.  (Respondents' Exh. C at ¶ 2)  The plea agreement specifically stated that the "parties hereto fully and completely understand and agree that <u>by entering into a plea agreement, the [Petitioner] consents to judicial fact-finding</u>

---

[1] The indictment does not contain a Count 2. (Respondents' Exh. B)

[2] Both Counts 4 and 5 involved victim A.D., a minor under fifteen years of age. (Respondents' Exh. B, C)

1   by a preponderance of the evidence as to any aspect or enhancement of sentence . . . ."

2   (Respondents' Exh. C at ¶ 7) (emphasis in original).

3       During the change of plea hearing[3], Petitioner acknowledged that he initialed the

4   provisions contained in the plea agreement, signed the agreement, and that his initials and

5   signature indicated "that [he] read and that [he understood] the plea." (Respondents' Exh. N

6   at 6-7) Petitioner also acknowledged that defense counsel had "explain[ed] the plea" to him,

7   and that he understood the plea agreement. (Respondents' Exh. N at 7)   In response to the

8   court's questions, Petitioner acknowledged that no force or threats were used to induce him

9   to plead guilty, and that he understood that on amended Count 4, he "would be sentenced to

10   the Department of Corrections." (Respondents' Exh. N at 7)   The trial court also advised

11   Petitioner of the sentencing range related to Count 4 - the minimum sentence was five years,

12   the presumptive sentence was ten years, and the maximum sentence was fifteen years.

13   (Respondents' Exh. N at 7-8)   Petitioner confirmed that he understood his sentencing

14   exposure. (Respondents' Exh. N at 8)   The court ensured that Petitioner understood the

15   rights he was foregoing by pleading guilty. (Respondents' Exh. N at 8-10)   Defense

16   counsel then articulated the factual bases for Petitioner's guilty pleas to Counts 4 and 5.

17   (Respondents' Exh. N at 10-11)   Petitioner agreed that counsel accurately described the facts

18   pertaining to both counts. (Respondents' Exh. N at 11)   The Court found that Petitioner's

19   plea was "knowingly and intelligently and voluntarily made." (Respondents' Exh. N at 12)

20   After hearing from the victims, the court accepted Petitioner's guilty pleas. (Respondents'

21   Exh. N at 12-14)

22       On June 18, 2007, the court[4] sentenced Petitioner on Count 4 to the presumptive

23   sentence of ten years' imprisonment with 369 days of presentence incarceration credit.

24   (Respondents' Exh. E)   The court sentenced Petitioner to lifetime probation on Count 5, "to

25   begin upon his absolute discharge from prison." (Respondents' Exh. E)   The court further

26   ―――――――――――

27     [3] The Honorable Wesley E. Peterson presided.

28     [4] The Honorable David M. Talamante presided.

ordered that Term 1 of the Sexual Offender Terms of probation be modified to "reflect that [Petitioner] not initiate, establish or maintain contact with any male or female child under the age of 18, **excluding** relatives, or attempt to do so without the prior written approval" of the probation department. (Respondents' Exh. E at 3) (emphasis in original).

### B. Post-Conviction Proceedings/(Rule 32 of-right)

By pleading guilty, Petitioner waived his right to a direct appeal, but retained the right to seek review in a petition for post-conviction relief under Ariz.R.Crim.P. 32, a so-called Rule 32 of-right proceeding. *See* Ariz.R.Crim.P. 32.1. On September 14, 2007, Petitioner filed a *pro per* notice of post-conviction relief pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. F) On September 19, 2007, the Office of the Legal Advocate was appointed to represent Petitioner. (Respondents' Exh. G) On February 1, 2008, counsel filed a notice of completion of post-conviction review, notifying the court that he was unable to find any claims to raise, and requesting that Petitioner be given additional time to file a *pro per* petition. (Respondents' Exh. H) The court granted Petitioner additional time to file a *pro per* petition. (Respondents' Exh. I, attachment 1) On March 6, 2008, Petitioner filed a *pro per* petition for post-conviction relief, raising the following claims:

> 1. The Arizona sentencing statute, A.R.S. § 13-604.01, is a "new code," and has no provision for any "Attempted Crime," other than "Attempted Murder." Therefore, Petitioner should have been sentenced under A.R.S. § 13-701, § 13-702.
>
> 2. Petitioner's sentence violates his Sixth Amendment right to a jury trial as discussed in *Blakely v. Washington*, [542 U.S. 296 (2004)].
>
> 3. Rule 32 [of the Arizona Rules of Criminal Procedure] is unconstitutional because it allows the Office of the Legal Advocate to "client shop" and overlook issues that Petitioner presented to the court as colorable claims. Counsel was ineffective for failing to raise colorable issues that Petitioner requested be raised in the Rule 32 petition.

(Respondents' Exh. I)

On May 30, 2008, the court denied relief and dismissed the petition for post-conviction relief. (Respondents' Exh. K) The court first addressed Petitioner's claim that because Arizona's sentencing provision A.R.S. § 13-604.01 does not include a provision for "attempted crimes" other than attempted murder, Petitioner should have been sentenced

under A.R.S. §§ 13-701, 13-702. The court rejected Petitioner's claim and found that Petitioner's sentence was consistent with the stipulations in the plea agreement. (Respondents' Exh. J) The court also noted that both the plea agreement and the sentencing order incorporate the attempt statute, A.R.S. § 13-1001, and the sentencing provision, A.R.S. § 13-604.01. (Respondents' Exh. K at 1) The court further explained that:

> A.R.S. § 13-604.01 defines a "dangerous crime against children" as includ[ing] molestation of a child and sexual conduct with a minor. The statute reads further that "a dangerous crime against children is in the 1st degree if it is a completed offense and is in the 2nd degree if it is a preparatory offense. . . ." Again, the plea agreement and the sentencing order are consistent with these statutory provisions. The sentencing provisions of 13-604.01 provide that notwithstanding 13-1001 (the attempt statute), "a person who is at least 18 years of age . . . and who stands convicted of a dangerous crime against children in the 2nd degree . . . is guilty of a Class 3 felony and shall be sentenced to a presumptive term of imprisonment of 10 years." Again, this is consistent with the sentencing order of 6/18/07.

(Respondents' Exh. K at 2) Regarding Petitioner's *Blakely* challenge, the court stated, "the provisions of the Defendant's plea agreement state quite clearly that in exchange for the sentencing stipulations the Defendant consented to judicial fact finding by a preponderance of the evidence as to any aspect or enhancement of sentence. In any case the Defendant was sentenced to a presumptive term, and not an aggravated sentence, to be followed by lifetime probation." (Respondents' Exh. K at 2) Finally, the court rejected Petitioner's claim of ineffective assistance of counsel, finding that there was "simply a disagreement over counsel's belief that after a review of the file there were no colorable claims for relief to raise in the PCR proceedings. Defendant's pro per petition itself does not raise any arguments relating to representation at the trial court level." (Respondents' Exh. K at 2)

On June 17, 2008, Petitioner filed a *pro per* petition for review in the Arizona Court of Appeals, raising the following claims:

> 1. The Arizona sentencing statute, A.R.S. § 13-604.01, is a "new code," and has no provision for any "Attempted Crime," other than "Attempted Murder." Therefore, Petitioner should have been sentenced under A.R.S. §§ 13-701, 13-702.

> 2. Rule 32 [of the Arizona Rules of Criminal Procedure] is unconstitutional because it allows the Office of the Legal Advocate to "client shop" and overlook issues that Petitioner presented to the court as colorable claims. Counsel was ineffective for failing to raise colorable issues that Petitioner requested be raised in the Rule 32 petition.

(Respondents' Exh. L[5])  The Arizona Court of Appeals denied review on September 18, 2009. (Respondents' Exh. M)

### C. Federal Petition for Writ of Habeas Corpus

On October 15, 2009, Petitioner filed a timely[6] Petition for Writ of Habeas Corpus in this Court, raising the following claims:

> **Ground One:** Petitioner's sentence violates the Supremacy Clause, the Sixth Amendment, and Petitioner's rights to due process and to be free from double jeopardy; and

> **Ground Two:** Petitioner's counsel was ineffective in violation of the Supremacy Clause and the Sixth Amendment.

(docket # 1)  Respondents assert that Petitioner's claims are unexhausted and procedurally barred, or lack merit.  (docket # 10)   Petitioner disputes Respondents' analysis of his claims. (docket # 12)  The Court will address these arguments below.

## II. Exhaustion and Procedural Bar

Respondents argue that Petitioner failed to exhaust his state remedies on several of his claims because he did not fairly present those claims to the Arizona Court of Appeals. Respondents further argue that those claims are now procedurally defaulted, and thus must be dismissed.

### A. Relevant Legal Principles

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted

---

[5]  In his Reply, Petitioner asserts that he filed a Supplemental Petition for review on November 18, 2008. (docket # 12, Exhibit A)  However, the Court cannot determine whether the Supplemental Petition was filed with the Court of Appeals.  The copy of the Supplemental Petition attached to Petitioner's Reply does not contain any markings, such as a file stamp, to indicate that it was filed with the Arizona Court of Appeals.  Additionally, the Supplemental Petition does not include the case number that was assigned to Petitioner's appeal.  (*see* Respondents' Exhs. L, M)

[6]  Respondents concede that the Petition is timely filed in accordance with 28 U.S.C. § 2244. (docket # 11 at 8)

available state-court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). When seeking habeas corpus review, Petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct review or in a petition for post-conviction relief. *See Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2004); *Crowell v. Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

To result in exhaustion, claims must be fairly presented. That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his federal claim. *Picard v. Conor*, 404 U.S. 270, 276-77 (1971). A claim has been fairly presented if petitioner has described in state court both the operative facts and the federal legal theory upon which he bases his claim in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (stating that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1205 (9th Cir. 2005) (stating that "[t]o exhaust a federal constitutional claim in state court, a petitioner has to have, at least, explicitly alerted the court that she was making a federal constitutional claim."). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish fair presentation of a federal constitutional claim. *Castillo*, 399 F.3d at 1002 (observing that "[e]xhaustion requires more

than drive-by citation, detached from any articulation of an underlying federal legal theory."); *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the petition or brief filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27. In summary, a "petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, state court remedies may, nonetheless, be "exhausted." This type of exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default. First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. *Nunnemaker*, 501 U.S. at 802-05. Second, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." *Teague v. Lane*, 489 U.S. 288, 297-99 (1989).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v.*

*Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

**B. Application of Law to Petitioner's Claims**

**1. Ground One**

In Ground One, Petitioner claims that his sentence violates the Supremacy Clause, Double Jeopardy Clause, Equal Protection, and Due Process. He also asserts that his sentence violates his Sixth Amendment right to a jury trial as articulated in *Blakely*. (docket # 1 at 6) Specifically, Petitioner argues that the "State of Arizona's sentencing schemes are in violation of the Supremacy Clause for the fact that the schemes are vague, complex, and unconstitutional . . . ." (docket # 1 at 6) He also argues that his sentence was illegally enhanced in violation of the Sixth Amendment because a judge, not a jury, found "all elements" in support of sentence. (docket # 1 at 6) Petitioner further argues that Arizona's sentencing schemes "[s]imultaneously violate[] Double Jeopardy Clause & Due Process Clause of the 5th and 14th Amend[ments] for multiple sentences on one document, i.e, docket No. CR 2006-030391-001 SE, consolidated for trial court purposes then running those counts consecutively of both greater & lesser included offenses constituting an illegal

sentence in violation of the United States Constitution, Equal Protection of the Laws Clause." (docket # 1 at 6) Respondents assert that Petitioner did not properly exhaust state remedies with respect to any of his claims raised in Ground One.

In his Petition for Post-Conviction Relief, Petitioner argued that Arizona's sentencing statute, A.R.S. § 13-604.01, did not contain any provisions for an attempted crime, other than attempted murder. (Respondents' Exh. I at 4) He further argued that under "the Equal Protection Clause of the Fourteenth Amendment . . . [a]ll Arizona Defendants sentenced under provisions of A.R.S. § 13-604.01 for any attempted crime, other than attempted murder, must be resentenced under the Sentencing Guidelines of A.R.S. § 13-701 and § 13-702." (Respondents' Exh. I at 7) Although Petitioner cited to the Equal Protection Clause, he essentially raised a state-law claim arguing that the sentencing court erred by sentencing under A.R.S. § 13-604.01, rather than under A.R.S. § 13-701, § 13-702. Likewise, the post-conviction court rejected this claim on the basis of state law. (Respondents' Exh. K)

In his second issue raised on post-conviction review, Petitioner argued that his sentence violated the Supreme Court's holding in *Blakely v. Washington*. (Respondents' Exh. I at 9) The post-conviction court rejected Petitioner's Sixth Amendment challenge to his sentence because Petitioner received the presumptive, not an aggravated, sentence. Therefore, the *Blakely* Court's Sixth Amendment analysis did not apply. (Respondents' Exh. K)

Petitioner appealed the denial of his petition for post-conviction relief to the Arizona Court of Appeals. (Respondents' Exh. M, docket # 12, Exhibit A) Petitioner again challenged his sentence by arguing that Arizona's sentencing statute, A.R.S. § 13-604.01, did not contain any provisions for attempted crimes, other than attempted murder. (Respondents' Exh. L) Petitioner argued that under the "Equal Protection Clause of the Fourteenth Amendment . . . [a]ll Arizona defendants sentenced under the provisions of A.R.S. 13-604.01 for any attempted crime, other than attempted murder, must be resentenced under the Sentencing Guidelines of A.R.S. § 13-701 & 13-702. . . ." (Respondents' Exh. L) Petitioner further argued that "A.R.S. § 13-604.01 . . . is in essence a

double enhancement of sentence not found to be true either admitted by the defendant or proven by a jury beyond a reasonable doubt as required within the Constitution for the United States of America." (Respondents' Exh. L)  The appellate court summarily denied review. (Respondents' Exh. M)

Respondents argue that Petitioner did not fairly present his *Blakely* claim to the State courts because, although he raised a *Blakely* claim to the trial court on post-conviction review, he did not raise that claim to the Arizona Court of Appeals.  In his petition for review, Petitioner did not specifically cite to *Blakely*.  However, he used *Blakely*-type language when he argued that "A.R.S. § 13-604.01 . . . is in essence a double enhancement of sentence not found to be true *either admitted by the defendant or proven by a jury beyond a reasonable doubt as required within the Constitution for the United States of America*." (Respondents' Exh. L) (emphasis added).  In support of his Response to the State's Answer, Petitioner attached a Supplemental Petition for review, signed and dated November 18, 2008, which he claims to have submitted to the Arizona Court of Appeals.  (docket # 12, Exh. A)  The Supplemental Petition includes a *Blakely* claim.  Thus, if Petitioner indeed filed the Supplemental Petition with the Arizona Court of Appeals, he likely exhausted his *Blakely* claim by presenting it both to the trial and appellate courts on post-conviction review.   However, the Court cannot discern whether the Supplemental Petition was actually filed with the Court of Appeals because it does not include any indicia of filing - such as a file stamp.  The Court need not resolve the exhaustion issue, however, because this Court may deny the *Blakely* on the merits regardless of whether Petitioner failed to exhaust state remedies on this claim.  *See* 28 U.S.C. § 2254(b)(2).  As set forth in Section III, *infra*, the *Blakely* claim lacks merit.

As to Petitioner's remaining claims asserted in Ground One, the record confirms Respondents' assertion that Petitioner did not fairly present a Supremacy Clause, Double Jeopardy Clause, Equal Protection, or Due Process claim to the state courts.  (Respondents'

Exhs. I, L; docket # 12, Exhibit A[7])  Although Petitioner cited the Equal Protection Clause and several other constitutional provisions in support of his challenge to A.R.S. § 13-604.01 in his post-conviction petition, he essentially challenged the application of Arizona's sentencing statutes under state law.   Likewise, the State court resolved Petitioner's claim on the basis of state law.  Petitioner's mere reference to a Constitutional provision did not transform his state law sentencing claim into a federal claim.

The Court finds that Petitioner's Supremacy Clause, Double Jeopardy Clause, Equal Protection, and Due Process claims asserted in Ground One are procedurally barred, because Petitioner failed to present those claims to the State courts and a return to state court to present those claims would be futile.  Petitioner is time-barred from raising the foregoing claims in a successive petition for post-conviction relief because the time for filing a notice of post-conviction relief has long expired.  *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later.") Likewise, Petitioner is time-barred from seeking appellate review because Arizona Rules of Criminal Procedure 32.9(c) and 31.19(a) require petitions for review from the denial of a petition for post-conviction relief, and petitions for review to be filed within 30 days after the final decision of the trial court or the court of appeals. Thus, Petitioner is time-barred from seeking further review in the state court.

---

[7]  In the Supplemental Petition which Petitioner purports to have filed in the Arizona Court of Appeals (see docket # 12, Exhibit A), Petitioner cites to the Double Jeopardy Clause. Even assuming Petitioner filed the Supplemental Petition in the Court of Appeals, presentation of a claim for the first time in a petition for review does not satisfy the exhaustion requirement. Petitioner did not present a Double Jeopardy claim in his petition for post-conviction relief to the trial court.  Under Arizona law, claims may not be raised for the first time in a petition for review from the denial of a post-conviction review petition. *See State v. Anderson*, 177 Ariz. 381, 385, 868 P.2d 964, 968 (Ariz.Ct.App. 1993) (stating that "[o]nly those claims raised in the petition for post-conviction relief and preserved in the motion for rehearing are subject to appellate review); Ariz.R.Crim.P. 32.2(a) (stating that "defendant shall be precluded from relief under this rule based upon any ground . . . (3) that has been waived at trial, on appeal, or in any previous collateral proceeding.").

1    Additionally, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

2    defendant is precluded from raising claims that could have been raised on direct appeal or in

3    any previous collateral proceeding.  *See State v. Curtis,* 185 Ariz. 112, 113, 912 P.2d 1341,

4    1342 (Ariz. Ct. App. 1995) ("Defendants are precluded from seeking post-conviction relief

5    on grounds that were adjudicated, or could have been raised and adjudicated, in a prior

6    appeal or prior petition for post-conviction relief."); *State v. Berryman,* 178 Ariz. 617, 624,

7    875 P.2d 850, 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been

8    improperly enhanced by prior conviction was precluded by defendant's failure to raise issue

9    on appeal).

10    **2.  Excusing Procedural Bar**

11    Because Petitioner's Supremacy Clause, Double Jeopardy Clause, Equal Protection,

12    and Due Process claims asserted in Ground One are procedurally defaulted, federal habeas

13    corpus review is only available if he can establish cause and prejudice or a fundamental

14    miscarriage of justice.  To establish "cause", a petitioner must establish that some objective

15    factor external to the defense impeded his efforts to comply with the state's procedural rules.

16    *Murray,* 477 U.S. at 488-492.  The following objective factors may constitute cause: (1)

17    interference by state officials, (2) a showing that the factual or legal basis for a claim was

18    not reasonably available, or (3) constitutionally ineffective assistance of counsel.  *Id.*

19    Prejudice is actual harm that results from the constitutional violation or error.  *Magby v.*

20    *Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for

21    his procedural default, the court need not consider whether petitioner has shown actual

22    prejudice resulting from the alleged constitutional violations.  *Smith v. Murray,* 477 U.S.

23    527, 533 (1986).  Petitioner offers no argument sufficient to overcome the procedural bar.

24    Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his

25    failure to present his claims to the Arizona  courts.  *Hughes v. Idaho State Board of*

26    *Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's

27    lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v.*

28    *Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments

1  concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.)
2  Petitioner has not shown cause or prejudice to excuse the procedural default.

3      Petitioner has also failed to show that failure to consider his defaulted claims will
4  result in a fundamental miscarriage of justice.  A federal court will only review a
5  procedurally defaulted habeas claim on the merits if petitioner demonstrates that failure to
6  consider the merits of the claim will result in a "fundamental miscarriage of justice."  A
7  "fundamental miscarriage of justice" occurs when a constitutional violation has probably
8  resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298
9  (1995).  The fundamental miscarriage of justice exception applies to a "narrow class of
10 cases" in which a petitioner makes an extraordinary showing that an innocent person was
11 probably convicted because of a constitutional violation.  *Schlup v. Delo,* 513 U.S. 298, 231
12 (1995).  Petitioner has the burden of demonstrating that a "constitutional violation has
13 resulted in the conviction of one who is actually innocent."  *Id.* at 327.  To establish the
14 requisite probability, Petitioner must prove with new reliable evidence that "it is more likely
15 than not that no reasonable juror would have found petitioner guilty beyond a reasonable
16 doubt."  *Id.* at 324, 327.   New evidence presented in support of a fundamental miscarriage
17 of justice claim may include "exculpatory scientific evidence, trustworthy eyewitness
18 accounts, or critical physical evidence that was not presented at trial."  *Id.* at 324, *see also,*
19 *House v. Bell,* 547 U.S. 518 (2006) (stating that a fundamental miscarriage of justice
20 contention must involve evidence that the trial jury did not have before it).

21     Petitioner has not offered any new evidence, or asserted that, in light of any newly
22 discovered evidence, "it is more likely than not that no reasonable juror would have found
23 petitioner guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 324, 327.

24     Because Petitioner has not established any basis to excuse his procedural default,
25 Petitioner's Supremacy Clause, Double Jeopardy Clause, Equal Protection, and Due Process
26 claims asserted in Ground One are barred from federal habeas corpus review.

27
28

### 3 . Ground Two

In Ground Two, Petitioner argues that: (a) counsel was ineffective for failing to "defend Petitioner's claims vigorously" and for failing to "file [a] detailed brief" for post-conviction review; (b) counsel acted "as a friend of the court" and had a conflict of interest, evidenced by the Legal Advocate using "the same format in not finding colorable claims" to raise for review; (c) Petitioner's plea was not knowingly, intelligently, and voluntarily made because he was not aware of the "the true length of [his] sentence." (docket # 1 at 7) Respondents concede that Petitioner properly presented his claim that counsel was ineffective for failing to file a detailed brief on post-conviction review. (docket # 11 at 20) The Court, therefore, will consider the merits of that claim.

Respondents assert that Petitioner's remaining claims asserted in Ground Two are procedurally defaulted because Petitioner did not present them to the state trial court or to the Arizona Court of Appeals. (Respondents' Exh. I, Exh. L) In his petition for post-conviction review, Petitioner argued that post-conviction counsel was ineffective because he ignored Petitioner's request to raise "colorable claims" on review. (Respondents' Exh. I) In his petition for post-conviction review filed with the trial court, Petitioner did not challenge the voluntariness of his plea or argue that counsel was ineffective based on conflict of interest. (Respondents' Exh. I, L) The post-conviction court rejected Petitioner's claim of ineffective assistance of counsel. (Respondents' Exh. K)

In his petition for review to the Arizona Court of Appeals, Petitioner again argued that post-conviction counsel failed to raise colorable claims to the court despite Petitioner's request. (Respondents' Exh. L) In his Supplemental Petition, Petitioner expanded on his claims of ineffective assistance of counsel, and suggested that his plea was involuntary because it was based on ineffective assistance. (docket # 12, exhibit A) As previously discussed, it is not clear whether Petitioner indeed filed the Supplemental Petition with the Arizona Court of Appeals. Even assuming Petitioner filed the Supplemental Petition, presentation of a claim for the first time in a petition for review to the appellate court does not satisfy the exhaustion requirement. Under Arizona law, claims may not be raised for the

first time in a petition for review from the denial of a post-conviction review petition. *See*
*State v. Anderson*, 177 Ariz. 381, 385, 868 P.2d 964, 968 (Ariz.Ct.App. 1993) (stating that
"[o]nly those claims raised in the petition for post-conviction relief and preserved in the
motion for rehearing are subject to appellate review); Ariz.R.Crim.P. 32.2(a) (stating that
"defendant shall be precluded from relief under this rule based upon any ground . . . (3) that
has been waived at trial, on appeal, or in any previous collateral proceeding.").

Accordingly, Petitioner's claims that counsel acted "as a friend of the court" and had
a conflict of interest, and that his plea was not knowingly, intelligently, and voluntarily
made because he was not aware of the "the true length of [his] sentence," are procedurally
barred because Petitioner did not fairly present those claims to the state courts and a return
to state court to present those claims would be futile. Petitioner is time-barred from raising
the foregoing claims in a successive petition for post-conviction relief because the time for
filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4
(a petition for post-conviction relief must be filed "within ninety days after the entry of
judgment and sentence or within thirty days after the issuance of the order and mandate in
the direct appeal, whichever is later.") Likewise, Petitioner is time-barred from seeking
appellate review because Arizona Rules of Criminal Procedure 32.9(c) and 31.19(a) require
petitions for review from the denial of a petition for post-conviction relief, and petitions for
review, to be filed within 30 days after the final decision of the trial court or the court of
appeals. Thus, Petitioner is time-barred from seeking further review in the state court.

Additionally, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a
defendant is precluded from raising claims that could have been raised on direct appeal or in
any previous collateral proceeding. *See State v. Curtis,* 185 Ariz. 112, 113, 912 P.2d 1341,
1342 (Ariz. Ct. App. 1995) ("Defendants are precluded from seeking post-conviction relief
on grounds that were adjudicated, or could have been raised and adjudicated, in a prior
appeal or prior petition for post-conviction relief."); *State v. Berryman,* 178 Ariz. 617, 624,
875 P.2d 850, 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been

improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal).

### 4. Excusing Procedural Bar

Because Petitioner's claims that his plea was involuntary and that counsel was ineffective based on conflict of interest were not properly presented to the state courts on post-conviction review are procedurally defaulted, federal habeas corpus review is only available if Petitioner can establish cause and prejudice or a fundamental miscarriage of justice. To establish "cause", a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Murray,* 477 U.S. at 488-492. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* Prejudice is actual harm that results from the constitutional violation or error. *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984). Where petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith,* 477 U.S. at 533. Petitioner offers no argument sufficient to overcome the procedural bar. Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to present his claims to the Arizona courts. *Hughes*, 800 F.2d at 909 (finding that an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho*, 862 F.2d at 1381 (finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.). Petitioner has not shown cause or prejudice to excuse the procedural default.

Petitioner has also failed to show that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. A federal court will only review a procedurally defaulted habeas claim on the merits if petitioner demonstrates that failure to consider the merits of the claim will result in a "fundamental miscarriage of justice." A "fundamental miscarriage of justice" occurs when a constitutional violation has probably

resulted in the conviction of one who is actually innocent." *Schlup,* 513 U.S. 298. The fundamental miscarriage of justice exception applies to a "narrow class of cases" in which a petitioner makes an extraordinary showing that an innocent person was probably convicted because of a constitutional violation. *Schlup,* 513 U.S. at 321. Petitioner has the burden of demonstrating that a "constitutional violation has resulted in the conviction of one who is actually innocent." *Id.* at 327. To establish requisite probability, Petitioner must prove with new reliable evidence that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 324, 327. New evidence presented in support of a fundamental miscarriage of justice claim may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324, *see also, House v. Bell,* 547 U.S. 518 (2006) (stating that a fundamental miscarriage of justice contention must involve evidence that the trial jury did not have before it).

Petitioner has not offered any new evidence, or asserted that, in light of any newly discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

Because Petitioner has not established any basis to excuse his procedural default, his challenge to the voluntariness of his pleas and that counsel was ineffective based on conflict of interest are barred from federal habeas corpus review.

**C. Stay and Abey**

On March 8, 2010, Petitioner filed a Motion to Stay and Abeyance. (docket # 14) Plaintiff requests that the Court stay this proceeding under *Rhines v. Weber*, 544 U.S. 269, 278 (2005) to permit him time to obtain counsel. The stay and abeyance procedure articulated in *Rhines* does not contemplate staying a case for such a purpose. Rather, *Rhines* permits the district court to stay a mixed habeas corpus petition, and hold it in abeyance pending the actual exhaustion of a petitioner's claims. *Rhines*, 544 U.S. at 278. As discussed below, the *Rhines* stay and abey procedure is not appropriate in this case.

A federal court may not "adjudicate mixed petitions for writ of habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines*, 544 U.S. at 273 (citing *Rose v. Lundy*, 455 U.S. 509, 518-519 (1982)). However, the Supreme Court in *Rhines* held that the AEDPA does not deprive district court of the authority to stay a petition for writ of habeas corpus where it would be the proper exercise of discretion. *Rhines*, 544 U.S. at 277-78. The Court held that stay and abeyance of a mixed petition (a petition containing both exhausted and unexhausted claims) to allow a petitioner to present the unexhausted claims to state court in the first instance and then return to federal court for review is only appropriate when the district court determines that there was good cause for petitioner's failure to exhaust the claims first in the state court.

As discussed above, the Petition contains either claims that were fairly presented to the state courts and, thus, were actually exhausted, or claims for which no state remedies are now available, and thus are technically exhausted. A petitioner has satisfied the exhaustion requirement if: (1) he has fairly presented his federal claim to the highest state court with jurisdiction to consider it; or (2) no state remedies remain available. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted). Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply. Accordingly, the Court should deny Petitioner's motion to Stay and Abey.

**III. Merits Review**

The Court will address the merits of Petitioner's claims that are properly before this Court after discussing the standard of review.

**A. Standard of Review**

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, a federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in state court" unless the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Mitchell v. Esparza*, 540 U.S 12, 14-15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Accordingly, the Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explained its ruling nor cited United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Early v. Packer*, 537 U.S. 3, 8 (2003). The United States Supreme Court has expressly held that citation to federal law is not required and that compliance with the habeas statute "does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell*, 540 U.S at 14 (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular

case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "It is not enough that a federal habeas court, in its independent review of the legal question," is left with the "firm conviction" that the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75. Rather, the petitioner must establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

## B. Ground One - *Blakely Claim*

In Ground One, Petitioner argues that his sentence violates the Sixth Amendment as construed in *Blakely v. Washington*, 542 U.S. 296 (2004), because a judge, not a jury, determined "the elements beyond a reasonable doubt." (docket # 1 at 6) The post-conviction court rejected this claim explaining that *Blakely* did not apply because Petitioner received a presumptive, not an aggravated, sentence. (Respondents' Exh. K) As an initial matter, the Court will consider the effect of Petitioner's plea agreement on this issue.

The terms of the plea agreement are controlled by the principles of contract law. *See, e.g.*, *United States v. Sandoval-Lopez*, 122 F.3d 797, 800 (9th Cir. 1997) ("Plea bargains are contractual in nature and subject to contract-law standards."); *United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir. 1990). Thus, courts apply contract principles to examine and enforce the plain language of the contract, or plea agreement, and do not consider extrinsic evidence to interpret the terms of a plea agreement if it is clear and unambiguous on its face. *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) (*citing Wilson Arlington Co. v. Prudential Ins. Co. of America*, 912 F.2d 366, 370 (9th Cir. 1990)); *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). The Ninth Circuit regularly enforces "knowing and voluntary" waivers of appellate rights in criminal cases, provided that the waivers are part of negotiated guilty pleas, *see United States v. Michlin*, 34 F.3d 896, 898 (9th Cir. 1994), and do not violate public policy, *see United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) (cataloguing public policy exceptions). Likewise, the Supreme Court has held that a

defendant's right to a jury trial on aggravating factors may be waived. *Blakely*, 542 U.S. at 310.

In this case, Petitioner entered into a plea agreement pursuant to which he pled guilty to Count 4, attempted molestation of a child, a class 3 felony and dangerous crime against children; and Count 5, attempted sexual conduct with a minor, a class 3 felony and dangerous crime against children. (Respondents' Exh. C[8])  The plea agreement specifically provided that, on Count 4, Petitioner "shall be sentenced to the Arizona Department of Corrections." (Respondents' Exh. C)  The plea agreement also stated that Petitioner's crimes carried a presumptive sentence of 10 years, a minimum sentence of 5 years, and a maximum sentence of 15 years. (Respondents' Exh. C)  The plea agreement also provided that Petitioner consented to judicial fact-finding by a preponderance of the evidence as to any aspect or enhancement of sentence. (Respondents' Exh. C at ¶ 7)  Petitioner also waived his right to "a trial by jury to determine guilt and to determine any fact used to impose sentence within the range stated above in paragraph one." (Respondents' Exh. C at ¶ 10)  The plea agreement further provided that Petitioner waived "any and all motions, defenses, objections, or requests which [he] has made or raised, or could assert hereafter, to the Court's entry of judgment against [him] *and imposition of a sentence* upon [him] consistent with this agreement." (Respondents' Exh. C at ¶ 6) (emphasis added)

The Court sentenced Petitioner to 10 years of imprisonment on Count 4 which comported with the terms of the plea agreement. (Respondents' Exh. E)  Because Petitioner was sentenced in accordance with the plea agreement, his guilty plea effectively waived his right to challenge to his sentence. *See United States v. Shedrick,* 493 F.3d 292, 303 (3rd Cir. 2007) (concluding that defendant's "*Blakely*-based contention," was argument that defendant "waived as part of [his] plea agreement."); *United States v. Cortez-Arias*, 403 F.3d 1111 (9th Cir. 2005), *amended by* 425 F.3d 547, 548 n. 8 (2005) (joining other circuits

---

[8]  Both counts involved the same victim, A.D., alleged to be under the age of fifteen. (Respondents' Exh. C).

1  in concluding that a claim under *[United States v.] Booker*, 543 U.S. 220 (2005) was waived
2  when defendant waived the right to appeal his sentence, noting that in exchange for his
3  guilty plea and waiver, the defendant received a benefit).

4      Moreover, even if Petitioner had not waived his right to challenge his sentence, his
5  Sixth Amendment challenge to his sentence lacks merit.  Petitioner argues that his 10-year
6  sentence on Count 4 violates the Sixth Amendment because factors used to impose his
7  sentence were not found by a jury beyond a reasonable doubt.  Supreme Court case law
8  instructs that the Sixth Amendment's jury-trial guarantee proscribes the imposition of a
9  sentence above the statutory maximum based on a fact, other than a prior conviction, not
10 found by a jury or admitted by the defendant. *Apprendi v. New Jersey*, 530 U.S. 466 (2000);
11 *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005).

12     In this case, Petitioner pled guilty to Count 4, attempted molestation of a child, a class
13 3 felony and dangerous crime against children.  (Respondents' Exh. C, E)   Under the
14 applicable Arizona law, at the time of Petitioner's sentencing his conviction yielded a
15 presumptive term of 10 years' imprisonment.  A.R.S. § 13-604.01(J) (2007).  The court could
16 impose a term as low as 5 years, or an aggravated term as high as 15 years. (*Id.*)  The court
17 sentenced Petitioner to the presumptive term of 10 years' imprisonment.  Because Petitioner
18 received the presumptive sentence, the *Blakely* decision does not apply to Petitioner.

19     Based on the foregoing, the State court's finding that Petitioner's sentence did not
20 violate the Sixth Amendment as construed in *Blakely* is neither contrary to, nor an
21 unreasonable application of, the Supreme Court's *Apprendi/Blakely* jurisprudence.  28 U.S.C.
22 §2254(d).  Accordingly, Petitioner's claim that his 10-year prison sentence violates the Sixth
23 Amendment fails.

24     **C.  Ground Two - Ineffective Assistance of Counsel**

25     In Ground Two, Petitioner asserts that the "State of Arizona appoints [i]neffective
26 [a]ssistance of [c]ounsel which fail to defend Petitioner's claims vigorously and file detailed
27 brief as to why no claims can be raised."  (docket # 1 at 7)  Petitioner also argues that post-
28 conviction counsel acted as "an extra arm of the State in which [the] Legal Advocate

- 23 -

appointed by the State uses the same format in not finding any colorable claims just to repeat this process on other defendants under his office like a production line in which he receives payments for services unconstitutionally unrendered by lining his pockets."  (docket # 1 at 7)

On post-conviction review, the trial court found that Petitioner's ineffective assistance of counsel claim was "simply a disagreement over counsel's belief that after a review of the file there were no colorable claims for relief to raise in PCR proceedings.  Defendant's *pro per* petition itself does not raise any arguments relating to representation at the trial court level." (Respondents' Exh. J at 2)   The trial court concluded that Petitioner had not raised a material issue of fact or law that entitled him to relief.  (Respondents' Exh. J at 2)   As discussed below, Petitioner has not shown that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*, 466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at

- 24 -

691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating that "a violation of the Sixth Amendment right to effective representation is not 'complete' until the defendant is prejudiced.") To show prejudice, petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The court may proceed directly to the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

In this case, Petitioner essentially challenges post-conviction counsel's conclusion that there were no colorable claims to raise on post-conviction review. Petitioner argues that counsel's determination that there were no colorable issues to raise, establishes that counsel acted as "an extra arm of the State in which [the] Legal Advocate appointed by the State uses the same format in not finding any colorable claims just to repeat this process on other defendants under his office like a production line . . . .." (docket # 1 at 7) Even assuming that counsel's performance was deficient because he followed the alleged "format" of the Legal Advocate's office by finding no colorable claims, Petitioner must also show that he was prejudiced by counsel's deficient performance to prevail on his ineffective assistance of counsel claim. *See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (presuming prejudice only when "counsel's deficient performance actually cause[d] the forfeiture of the defendant's appeal"). Petitioner has not sufficiently alleged prejudice from his post-conviction counsel's determination that there were no colorable claims to raise in his Rule 32 of-right proceeding. In order to establish ineffective assistance of counsel based on counsel's failure to raise a particular issue on appeal, Petitioner must show that the omitted argument would have likely been successful. *See Jones v. Smith*, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (holding that appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal);

- 25 -

*Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (failing to raise meritless argument on appeal does not constitute ineffective assistance of counsel). Petitioner has not met his burden. Petitioner has not identified any issues that counsel should have raised for review, let alone any issues that likely would have been successful. Moreover, the claims that Petitioner raised in his *pro per* petition were unsuccessful and rejected by the post-conviction court. (Respondents' Exh. J)

In view of the foregoing, Petitioner has not established that the state court's rejection of Petitioner's claim of ineffective assistance of counsel on post-conviction review was contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254.

**IV. Conclusion**

Based on the foregoing, the Petition should be denied and dismissed because Petitioner's claims are either procedurally barred from federal habeas corpus review or lack merit.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (docket # 1) be **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Stay and Abey (docket # 14) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1);

Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 16th day of March, 2010.

Lawrence O. Anderson
United States Magistrate Judge